**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| CONSTANTINO CARRERA, *Petitioner-Appellant*, | No. 08-99007 |
| v. | D.C. No. 1:90-CV-00478-AWI |
| ROBERT L. AYERS, JR., Warden of the California State Prison at San Quentin, *Respondent-Appellee*. | OPINION |

Appeal from the United States District Court
for the Eastern District of California
Anthony W. Ishii, Chief District Judge, Presiding

Argued and Submitted En Banc
June 20, 2012—Pasadena, California

Filed November 6, 2012

Before: Alex Kozinski, Chief Judge, Harry Pregerson,
William A. Fletcher, Raymond C. Fisher,
Marsha S. Berzon, Richard C. Tallman, Richard R. Clifton,
Susan S. Ikuta, N. Randy Smith, Mary H. Murguia, and
Morgan Christen, Circuit Judges.

Opinion by Judge William A. Fletcher;
Dissent by Judge Pregerson

## SUMMARY[*]

### Habeas Corpus/Death Penalty

The en banc court affirmed the district court's denial of a 28 U.S.C. § 2254 habeas corpus petition in a pre-AEDPA case, raising a challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986), for lack of prejudice. The panel held that Carrera could not establish prejudice at trial because he could not make a strong likelihood that prospective Hispanic jurors were challenged because of any specific bias. *See People v. Wheeler*, 583 P.2d 748 (Cal. 1978). The panel also held that Carrera could not establish prejudice by showing that a *Wheeler* objection would have succeeded on direct appeal, based on the law as it existed when his conviction became final on direct appeal. The panel explained that, despite significant changes in the law while Carrera's case was pending on appeal, the California Supreme Court would have applied the *Wheeler* standard instead of the *Batson* standard.

Judge Pregerson dissented. He disagreed with the majority which, although it did not dispute that Carrera's attorney erred, found that the ineffective assistance claim would not have had a "reasonable probability" of succeeding. Under his view, the majority reached its conclusion by misreading the record and the law. Judge Pregerson would hold that Carrera did not receive a fair trial because the prosecutor purposefully excluded Hispanic jurors and Carrera's attorney did nothing to challenge him.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Stephen B. Bedrick, Oakland, CA for the Petitioner-Appellant.

Clifford Edward Zall, Office of the California Attorney General, Sacramento, CA for the Respondent-Appellee.

**OPINION**

W. FLETCHER, Circuit Judge:

Petitioner-Appellant Constantino Carrera was found guilty in 1983 of first-degree murder of two people during a robbery. Carrera is Hispanic. The victims were white. During voir dire, the prosecutor peremptorily challenged 75 percent of the Hispanic-surnamed venirepersons. By contrast, he peremptorily challenged only 26 percent of the white, non-Hispanic-surnamed venirepersons. At the time of Carrera's trial, *People v. Wheeler*, 22 Cal. 3d 258 (Cal. 1978), which held the use of peremptory challenges to strike venirepersons based solely on race to be a violation of the California Constitution, had been the law in California for five years. *Batson v. Kentucky*, 476 U.S. 79 (1986), had not yet been decided. Carrera's counsel did not object under *Wheeler* to the prosecutor's peremptory challenges.

Carrera contends on habeas that his counsel's failure to make a *Wheeler* objection was ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984).

We affirm the district court's denial of relief, holding that Carrera has not satisfied the prejudice prong of *Strickland*.[1]

## I. Background

Carrera and another person were convicted in separate trials in Kern County Superior Court in California for killing a white couple during a robbery. *See Carrera v. Ayers*, No. 1:90-CV-00478-AWI, 2008 WL 681842, at \*1 (E.D. Cal. Mar. 11, 2008). The other person, then seventeen years old, was statutorily ineligible for the death penalty and was sentenced to fifty years to life. *Id.* at \*2 n.3. Carrera, twenty years old at the time of the crime, was convicted of first-degree murder with special circumstances and was sentenced to death.

The California Supreme Court affirmed Carrera's conviction and death sentence on direct appeal. *People v. Carrera*, 49 Cal. 3d 291 (1989). The court held that there had been multiple errors at trial, including an instructional error relating to Carrera's intent to kill, but that the errors were all harmless. *See id.* at 309–11. Carrera filed his federal habeas petition in 1990, before the effective date of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). *See Robinson v. Schriro*, 595 F.3d 1086, 1099 (9th Cir. 2010).

The federal district court set aside Carrera's death sentence. The court found repeated instances of prosecutorial misconduct during trial: The prosecutor failed to correct

---

[1] We address in this opinion only Carrera's *Wheeler*-based *Strickland* claim. We address his other claims in an unpublished memorandum filed simultaneously with this opinion.

testimony he knew was perjurious; he concealed inducements to two testifying jailhouse snitches; and he presented flatly inconsistent factual narratives at the separate trials of Carrera and his co-perpetrator. The court concluded that an intent-to-kill instructional error was not harmless because its application was tainted by prosecutorial misconduct.

The district court subsequently denied Carrera's guilt-phase claims. One of those was a claim that his trial counsel had provided ineffective assistance in failing to make a *Wheeler* objection. Carrera appealed.

## II. Jurisdiction and Standard of Review

We have appellate jurisdiction under 28 U.S.C. §§ 1291 and 2253. "We review the district court's denial of [Carrera's] habeas petition de novo, and the district court's findings of fact for clear error." *Robinson*, 595 F.3d at 1099. Because Carrera filed his federal habeas petition before the effective date of the AEDPA, we consider it under the pre-AEDPA standard of review. *Id.* Ineffective assistance of counsel claims present mixed questions of law and fact. *Id.* "Under pre-AEDPA law, we owe no deference to the state court's resolution of questions of law or mixed questions of law and fact." *Id.* "We review the district court's findings of fact for clear error." *Id.*

## III. Discussion

### A. Voir Dire

Prior to voir dire, when the racial and ethnic composition of the venire panel was still unknown, Carrera's counsel

moved to quash the venire on the ground that there were insufficient procedures in place to ensure a panel that reflected the ethnic and racial diversity of Kern County. *See People v. Buford*, 182 Cal. Rptr. 904, 905 (Cal. Ct. App. 1982) (addressing a jury challenge "on the ground that blacks were underrepresented on that jury and on other juries in [the] County as a result of systematic exclusion in the jury-selection process" (footnote omitted)). When the venire panel was chosen, it turned out that between eleven and fourteen members of the panel had Hispanic surnames, and at least four members were black. Carrera's counsel withdrew her motion to quash.

During voir dire, the prosecutor and Carrera's defense counsel both asked questions directed to ethnicity. The prosecutor asked Hispanic-surnamed venirepersons if the fact that the defendant was of "Spanish descent" would affect their decision-making. Carrera's counsel also asked questions directed to ethnicity. For example, she asked venireperson Martinez:

If you were chosen as a juror in this case and you were the only one that had a Spanish surname sitting on the panel, would you feel that you would be under an undue hardship, so to speak, for want of a better word, feeling you would have to vote just as everyone else did simply because they might claim because you have got a Spanish surname maybe you were being more lenient or that sort of thing?

The prosecutor exercised peremptory challenges to 75 percent of the venirepersons with Hispanic surnames. Of eight prospective jurors with Hispanic surnames, the State

exercised peremptory challenges to six; the other two were seated on the jury. An additional person with a Hispanic surname was seated as an alternate. By contrast, the prosecutor exercised peremptory challenges against 26 percent (eleven of forty-one) white, non-Hispanic-surnamed prospective jurors. Five years earlier, the California Supreme Court had held that "the use of peremptory challenges to remove prospective jurors on the sole ground of group bias violates the right to trial by a jury drawn from a representative cross-section of the community under article I, section 16, of the California Constitution." *Wheeler*, 22 Cal. 3d at 276–77. Carrera's counsel made no objection under *Wheeler* to the prosecutor's use of peremptory challenges to Hispanic-surnamed venirepersons.

## B. Ineffective Assistance of Counsel Claim

Carrera contends that his trial counsel's failure to make a *Wheeler* objection was ineffective assistance of counsel in violation of his Sixth Amendment right to counsel. To establish ineffective assistance of counsel under *Strickland*, a defendant must show both deficient performance and prejudice. Because we conclude that Carrera has not carried his burden of proof to show prejudice, we need not decide whether he has shown deficient performance.

"[A]ny deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Strickland*, 466 U.S. at 692. "The defendant must show that there is *a reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Id.* at 694 (emphasis added). The petitioner has "the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Id.* at 696.

The first step in a *Wheeler* objection was to show a prima facie case of unlawful discrimination. "If a party believes his opponent is using his peremptory challenges to strike jurors on the ground of group bias alone, he must raise the point in timely fashion and make a prima facie case of such discrimination to the satisfaction of the court." *Wheeler*, 22 Cal. 3d at 280. A prima facie case under *Wheeler* had three elements:

> First . . . [the party] should make as complete a record of the circumstances as is feasible. Second, he must establish that the persons excluded are members of a cognizable group within the meaning of the representative cross-section rule. Third, from all the circumstances of the case he must show *a strong likelihood* that such persons are being challenged because of their group association rather than because of any specific bias.

*Id.* (emphasis added) (footnote omitted). "If the court finds that a prima facie case has been made, the burden shifts to the other party to show if he can that the peremptory challenges in question were not predicated on group bias alone." *Id.* at 281 (footnote omitted).

Because we are evaluating the likelihood of success of Carrera's hypothetical *Wheeler* objection in the context of an ineffective assistance claim, he has the burden to show under

*Strickland* a reasonable probability he would have prevailed on a *Wheeler* claim. For the reasons that follow, we conclude that he has not carried his burden under *Strickland*.

### 1. Prejudice at Trial

The record shows that the prosecutor exercised peremptory strikes against six venirepersons with Hispanic surnames. Carrera concedes that one of the six — his counsel's mail carrier — was properly struck. The record suggests obvious non-discriminatory reasons for four of the five remaining strikes. One prospective juror, Petra Celedon, appeared bitter about being called to jury service. A second prospective juror, Alice Hernandez, worked at the juvenile detention facility where Carrera's co-defendant was held. A third prospective juror, Maria Carrillo, had a son who had a criminal record. A fourth prospective juror, Mary Garcia, told the court at the beginning of her voir dire that she could not impose the death penalty, though she later said that she could do so.

Only one of the prosecutor's peremptory challenges was problematic. Prospective juror Lawrence Martinez unequivocally expressed his ability to impose the death penalty if, in his judgment, the circumstances warranted it. When asked if he had "family . . . involved in any type of charges or a trial," Martinez responded that a friend had had a drunk driving charge but mentioned no family members. He had no connection to the victims, defendants, or witnesses.

The record reveals no obvious non-discriminatory reason to challenge Martinez. But *Wheeler* required a stronger showing to establish a prima facie case. Not only were five

of the six challenges to Hispanic-surnamed venirepersons relatively unproblematic; further, two Hispanic-surnamed persons were seated on the jury, and one Hispanic-surnamed person was seated as an alternate. Two California Court of Appeal cases, decided shortly after Carrera's trial, highlight how difficult it would have been for Carrera to establish a prima facie case in these circumstances.

In *People v. Boyd*, 212 Cal. Rptr. 873, 880–82 (Cal. Ct. App. 1985), a Court of Appeal held that, despite the prosecutor's peremptory challenges to three black venirepersons, no prima facie case had been established under *Wheeler* because two black jurors were seated on the jury. In *People v. Davis*, 234 Cal. Rptr. 859, 866 (Cal. Ct. App. 1987), the prosecutor peremptorily challenged six black venirepersons, but allowed three black jurors to be seated. The court wrote:

> [T]he presence of two and then three members of the cognizable group in the jury box at all times afforded the defendant a representative cross-section of the community and afforded equal protection to all, the defendant, the prospective jurors excused and the community at large. There was no prima facie case of exclusion for group bias demonstrated at any time.

*Id.* at 869. The California Supreme Court overruled *Boyd* and *Davis,* but not until four years after Carrera's trial. *See People v. Snow*, 44 Cal. 3d 216, 225–26 (1987).

## 2. Prejudice on Appeal

Carrera can also demonstrate prejudice by showing that a *Wheeler* objection would have succeeded on direct appeal. His counsel's failure to make a *Wheeler* objection at trial was a procedural default under state law that prevented him from making a *Wheeler* challenge on appeal. *See Carrera*, 49 Cal. 3d at 331 n.29 (Cal. 1989) (noting "[t]he requirement that a contemporaneous motion be made to object to a prosecutor's use of peremptory challenges to exclude prospective jurors of one racial group"); *Wheeler*, 22 Cal. 3d at 284 n.32 ("[P]eremptories [were] not 'open to examination' unless and until on a timely motion the trial court is satisfied there is a prima facie showing that jurors are being challenged on the sole ground of group bias.").

If Carrera's counsel had made a *Wheeler* objection at trial, that objection would have been preserved for appellate review. In some circumstances, the failure to make an objection results in an undeveloped record, such that it is difficult or impossible to know what rulings would have resulted on appeal had a proper record been developed. Here, however, there is no such difficulty, for the record at trial was sufficiently developed to permit a meaningful evaluation of a prima facie case under *Wheeler*.

We must determine whether Carrera was prejudiced on appeal based on the law as it existed when his conviction became final on direct appeal. His conviction became final on April 23, 1990, when the United States Supreme Court denied certiorari. *See Carrera v. California*, 495 U.S. 911 (1990).

While Carrera's case was pending on appeal, there were two significant changes in the law. First, in 1987 the California Supreme Court overruled *Boyd* and *Davis*. The court held in *Snow* that the presence of group members on a jury does not, by itself, prevent a defendant from making a prima facie case under *Wheeler*. It wrote, "[W]e disapprove language in *People v. Davis* suggesting that the presence of two or three Blacks in the jury box following voir dire precludes the trial court from finding a prima facie case of exclusion." *Snow*, 44 Cal. 3d at 225–26 (citation omitted). After *Snow*, California courts were required to review all the circumstances surrounding voir dire to determine whether an objecting party had established a prima facie case of discrimination under *Wheeler*.

In *People v. Allen*, 260 Cal. Rptr. 463, 469 (Cal. Ct. App. 1989), a Court of Appeal noted that "the exclusion of disproportionate numbers of minority jurors per se" does not automatically establish a prima facie case of discrimination under *Wheeler*. "[T]he law is clear that a prima facie case of group bias requiring prosecutorial explanation arises only if *from all the circumstances of the case* the trial court finds a strong likelihood that the persons were being challenged because of their group association rather than specific bias." *Id.* (emphasis in original). Relevant circumstances included the extent the prosecutor questioned the jurors struck on peremptory challenges. *People v. Trevino*, 39 Cal. 3d 667, 688 (1985) ("The district attorney exercised peremptory challenges to remove six Hispanics from the jury after asking them few if any questions on voir dire.")*, disapproved on other grounds by People v. Johnson*, 47 Cal. 3d 1194, 1219–20 (1989); *People v. Allen*, 23 Cal. 3d 286, 294 (1979) (noting as one of four factors of defendant's prima facie case

"that the district attorney had excluded many black persons after engaging in no more than desultory voir dire" (internal quotation marks and citation omitted)); *People v. Moss*, 233 Cal. Rptr. 153, 157–58 (Cal. Ct. App. 1986) ("Although the prosecutor questioned [one of the two black jurors] extensively on voir dire . . . , he asked no questions at all of [the other black juror]."). Other relevant circumstances included the common characteristics other than race among the venirepersons, *see People v. Turner*, 42 Cal. 3d 711, 719 (1986); *Trevino*, 39 Cal. 3d at 688; *Allen*, 23 Cal. 3d at 34–35; *Moss*, 233 Cal. Rptr. at 157–58, as well as indications of specific bias apparent in the record, *see, e.g.*, *Turner*, 42 Cal. 3d at 719–20; *Allen*, 152 Cal. Rptr. at 468–69.

Second, in 1986 the United States Supreme Court held in *Batson v. Kentucky* that racially discriminatory peremptory challenges violate the Equal Protection Clause of the Fourteenth Amendment. *Batson* applied retroactively to all cases then pending on direct review. *See Griffith v. Kentucky*, 479 U.S. 314, 322–23 (1987). A prima facie case under *Wheeler* required the objecting party to "show *a strong likelihood* that such persons are being challenged because of their group association rather than because of any specific bias." *Wheeler*, 22 Cal. 3d at 280 (emphasis added). A prima facie case under *Batson* requires only that the objecting party show "that the totality of the relevant facts *gives rise to an inference* of discriminatory purpose." *Batson*, 476 U.S. at 93–94 (emphasis added).

In 2003, the California Supreme Court concluded that the *Wheeler* and *Batson* standards for making out a prima facie case were the same, and that *Wheeler*'s "strong likelihood of discrimination" continued to be the governing standard. *See*

*People v. Johnson*, 30 Cal. 4th 1302, 1313–14 (2003). Two years later, the United States Supreme Court disagreed with the California Supreme Court, holding that the *Wheeler* and *Batson* standards are different, and that the less demanding *Batson* standard controls. *Johnson v. California*, 545 U.S. 162 (2005).

We must evaluate Carrera's ineffective assistance claim under the law the California Supreme Court would have applied on direct appeal in 1990. When Carrera's appeal was decided, the United States Supreme Court's decision in *Johnson* was still fifteen years in the future. We therefore apply *Wheeler*'s "strong likelihood" standard, rather than *Batson*'s "raise an inference" standard, in determining whether Carrera would have been able to establish a prima facie case in the California Supreme Court on appeal.

A California appellate court deciding a *Wheeler* objection in 1990 would have examined the record not merely for evidence of group bias but also for evidence of specific bias against individual venirepersons. *See, e.g.*, *Turner*, 42 Cal. 3d at 719; *Allen*, 260 Cal. Rptr. at 468–69. Carrera argues that the prosecutor's six peremptory strikes of Hispanic-surnamed venirepersons would have been enough to establish a prima facie case of specific bias under *Wheeler*. We have already summarized the evidence with respect to those strikes. We conclude that the absence of an obvious non-discriminatory reason with respect to one prospective juror out of six would not have been enough to enable Carrera to establish a prima facie case. Not only was the evidence of specific bias against venireperson Martinez relatively weak; further two Hispanic-surnamed venirepersons were seated on the jury and one was seated as an alternate. In *Snow*, the California Supreme Court

had held that the presence of group members on the jury was not, by itself, sufficient to defeat a prima facie case of discrimination under *Wheeler*, but their presence continued to be relevant to a determination whether, under all the circumstances, a prima facie case had been established.

Carrera argues further that a prima facie case of group bias can be shown "because the prosecutor questioned minority jurors differently than white jurors . . . ." The prosecutor engaged in far more than a "desultory voir dire" with the struck jurors. *Cf. Allen*, 23 Cal. 3d at 294. It is true that the prosecutor asked Hispanic-surnamed venirepersons whether the fact that the defendant was "of Spanish descent" would affect their deliberations, and that he did not ask potential white jurors similar ethnicity-based questions. However, asking questions about potential bias is the purpose of voir dire. Indeed, as we noted above, Carrera's counsel also asked ethnicity-based questions of the Hispanic-surnamed venirepersons.

Were we reviewing the prosecutor's actions in a different procedural posture or under current law, we might well reach a different conclusion. But evaluating an ineffective assistance of counsel claim on the record before us, under *Wheeler* as it was interpreted in 1990, we cannot say Carrera has carried his burden of proof to show that he was prejudiced by his counsel's failure to object to the prosecutor's peremptory strikes. Carrera has not shown a "reasonable probability" that on direct review, he would have succeeded under *Wheeler* in showing "a strong likelihood" that challenges to Hispanic-surnamed venirepersons were made "because of their group association."

**Conclusion**

Because Carrera is unable to establish that his trial counsel's failure to make a *Wheeler* motion was prejudicial, he has not established an ineffective assistance of counsel claim under *Strickland*. We therefore affirm the district court.

**AFFIRMED.**

PREGERSON, Circuit Judge, dissenting:

A fair trial requires the selection of a fair jury. That didn't happen in Constantino Carrera's case because his defense counsel was incompetent.

Michael Vedrasco, the prosecutor in defendant Carrera's case, struck seventy-five percent of potential Hispanic jurors, but only twenty-six percent of potential white jurors. Carrera's defense attorney, Donnalee Huffman,[1] failed to object. The majority concludes that attorney Huffman's failure to object to the prosecutor's striking of prospective Hispanic jurors did not amount to ineffective assistance of counsel. I disagree.

Both the United States Constitution and the California Constitution guarantee a defendant in a criminal case a fair and impartial jury. U.S. Const. amend. VI; Cal. Const., art. I, § 16. In *People v. Wheeler*, the California Supreme Court established that racial bias in jury selection violates this constitutional guarantee. *People v. Wheeler*, 583 P.2d 748,

---

[1] Huffman used her married name, Mendez, during Carrera's trial.

755 (Cal. 1978). To support a *Wheeler* motion, the defense attorney must "show a strong likelihood" that the prosecutor struck prospective jurors because of their "group association." *Id*. at 764. Once the defense attorney presents such evidence, "the court must determine whether a *reasonable inference* arises that peremptory challenges are being used on the ground of group bias alone." *Id.* (emphasis added).

The majority opinion only cites *Wheeler*'s "strong likelihood" standard and ignores its "reasonable inference" standard. *See* Maj. op. at 13. Under California's evidence laws, however, both standards mean a preponderance of the evidence. Cal. Evid. Code § 115 ("Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence."). While the majority opinion distinguishes the *Wheeler* standard from *Batson's* "inference" standard, the California courts at the time of Carrera's 1983 trial applied *Wheeler's* "reasonable inference" standard even though the *Batson* decision was years in the future. *See People v. Fuller*, 186 Cal. Rptr. 283, 296 (Ct. App. 1982) ("[A] fair reading of *Wheeler* requires only that the court find a reasonable inference of group bias once an appropriate foundation is laid.").

Furthermore, the California Supreme Court would have been required to apply the *Batson* standard to Carrera's 1989 appeal. The Supreme Court held in *Batson v. Kentucky* that a defendant creates a *prima facie* case of unconstitutional jury selection by raising an "inference of purposeful discrimination." *Batson v. Kentucky*, 476 U.S. 79, 94 (1986). Because Carrera's case was pending on direct review when the Supreme Court decided *Batson* in 1986, *Batson* governed Carrera's case on appeal to the California Supreme Court.

*See Griffith v. Kentucky*, 479 U.S. 314, 322–23 (1987). The standard for showing a constitutional violation in Carrera's case cannot be stricter than what the Supreme Court mandated in *Batson v. Kentucky*. *See Cooper v. Aaron*, 358 U.S. 1, 18 (1958) ("the federal judiciary is supreme in the exposition of the law of the Constitution").

The Sixth Amendment guarantees defendants the *effective* assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). If Carrera had received effective assistance, there is a "reasonable probability" that he would have succeeded in his *Wheeler* claim. *See id.* at 694. And even if a *Wheeler* objection failed to persuade the trial judge, the objection would have preserved the *Wheeler* motion so that Carrera could have raised it on his direct appeal. Thus, defense counsel's incompetence deprived Carrera of his opportunity to raise a *Wheeler* motion before the state trial court and, because this was a death penalty case, on direct appeal to the California Supreme Court. *See* Cal. R. Ct. 8.600 ("If a judgment imposes a sentence of death, an appeal by the defendant is automatically taken to the [California] Supreme Court.").

As a result of defense counsel's incompetence and the prejudice Carrera suffered, I would grant his request for Habeas relief.

# I. Carrera's Attorney Fell Below an Objective Standard of Performance in Failing To Present a *Wheeler* Motion

There are a number of reasons why defense counsel Huffman may have failed to present a *Wheeler* motion. But

none of these reasons was strategic and none was excusable. For example, Huffman was defending Carrera against a murder charge brought by the District Attorney's office, while also working with that same District Attorney's office to secure the conviction of her husband, who shot her in the arm and told her that he "meant to kill" her. Huffman's divided loyalties may have dulled her vigorous representation of Carrera.

Or perhaps Huffman failed to make a *Wheeler* motion because she was simply–and woefully–unprepared. Huffman rushed to trial without an investigator because her investigator had been her husband–until the time he tried to kill her. She had no money to hire a new one because she faced bankruptcy and was saddled with more than $100,000 in debt. So, she cut corners. Unprepared and distracted, Huffman may not have been aware that the prosecutor's disproportionate strikes of Hispanic jurors warranted an objection.

We will never know why Huffman sat silently at counsel table while the prosecutor struck six out of the eight prospective Hispanic jurors, despite the fact that *Wheeler* had been on the law books for five years. When asked in a declaration prepared for Carrera's direct appeal why she made no *Wheeler* motion, Huffman said: "I don't know why at this time. No strategic reason."

But any competent attorney would have objected to the prosecutor's highly disproportionate peremptory challenges of Hispanic jurors. When this case was on appeal to the California Supreme Court, a defense attorney, Guyton Jinkerson, who in the past had qualified as an expert on ineffective assistance said as much in evaluating Huffman's

performance. Jinkerson declared in 1987 that Huffman's performance "fell below an objective standard of reasonableness under the prevailing professional norms." He added that but for Huffman's "unprofessional errors, the result of the proceeding would have been different."

Indeed, I suggest that under the performance prong of *Strickland v. Washington*, Huffman's failure to raise a *Wheeler* motion clearly "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Her silence during these proceedings was not a "strateg[ic] choice . . . within the range of professionally reasonable judgments." *Id*. at 699. Rather, it was ineffective performance. The majority does not contest this point. Maj. op. at 7. Instead, the majority opinion denies Carrera's claim based on *Strickland's* prejudice prong, finding that Carrera's *Wheeler* motion would not have succeeded, had Huffman raised it.

## II. Carrera Suffered Prejudice as a Result of his Attorney's Failure to Make a *Wheeler* Motion

To demonstrate *Strickland* prejudice, Carrera must show that there is a "reasonable probability" that the outcome would have been different but for his attorney's error. *See Strickland*, 466 U.S. at 694. We've interpreted "reasonable probability" to mean "one sufficient to undermine confidence in the outcome, but . . . less than the preponderance more-likely-than-not standard." *Lambright v. Schriro*, 490 F.3d 1103, 1121 (9th Cir. 2007) (internal quotations omitted).

The majority holds that Carrera cannot show a reasonable probability that he would have succeeded in challenging the

striking of six of the eight Hispanic jurors. *See* Maj. op. at 9. But Carrera's evidence of unconstitutional racial bias matched *Wheeler*'s examples of evidence that demonstrates prejudicial jury selection. The prosecutor struck "most" of the Hispanic jurors. *See Wheeler*, 583 P.2d at 764. He also "used a disproportionate number of his peremptories against the group" by directing thirty-five percent of his strikes against Hispanics although they comprised only sixteen percent of the jurors in the box. *See id.*

Since no *Wheeler* challenge was actually made, it is hard to know what explanation the prosecutor would have provided for his strikes of Hispanic jurors. Nonetheless, the majority offers a few "obvious" explanations from its reading of the record. *See* Maj. op. at 9. Upon closer scrutiny, however, these explanations are neither obvious nor reasonable.

## A. The Record Does Not Show Legitimate, Non-Prejudicial Reasons for Striking the Hispanic Jurors

### 1. Prospective Juror Lawrence Martinez

The majority concedes that the peremptory strike of Lawrence Martinez "was problematic." *See* Maj. op. at 9. Martinez "unequivocally expressed his ability to impose the death penalty," had no family members with any type of criminal history, and had no connection to any of the parties or witnesses in Carrera's case. Maj. op. at 9. Striking Martinez was improper. As California Justice Stanley Mosk emphasized two years before he presided over Carrera's appeal, "[t]he exercise of one improper challenge is, of

course, sufficient to establish a [*Wheeler*] violation." *People v. Ledesma*, 729 P.2d 839, 881 (Cal. 1987) (Mosk, J., concurring). Had defense counsel Huffman objected to prosecutor Vedrasco's improper strike of Martinez, that objection alone could have established a *Wheeler* violation.

### 2. Prospective Juror Petra Celedon

The majority finds an "obvious" reason for striking Petra Celedon. According to the majority, "prospective juror, Petra Celedon, appeared bitter about being called to jury service." Maj. op. at 9. But as Celedon herself clarified, she was not bitter about jury service. A special education teacher, Celedon was sorry she was absent from school on the day she reported for jury duty in particular. As she explained: "*this* is a special day for [students] and some of them have been very anxious because I am not going to be there *today*." Prospective jurors were told that the trial would not start until the following week, after the end of the school year. Celedon told the prosecutor that after school finished for the year, she would have no problem serving as a fair juror. But while Celedon's school let out for the summer well before the start of trial, the prosecutor nonetheless struck her, and the majority sees no problem.

### 3. Prospective Juror Alice Hernandez

The majority finds an "obvious non-discriminatory" reason for the prosecutor's strike of Alice Hernandez: she "worked at the juvenile detention facility where Carrera's co-defendant was held." Maj. op. at 9. Under questioning by Huffman, Hernandez stated that she worked in housekeeping, did not know the co-defendant, and had never heard of the

case. Furthermore, the prosecutor never asked Hernandez any questions about her employment or whether her employment had any impact on her ability to serve as an impartial juror. This lack of follow-up questioning raises a red flag under *Green v. LaMarque*, 532 F.3d 1028, 1033 (9th Cir. 2008), which explained that if a prosecutor challenges a juror for a factor on which he asked no questions, that lack of further questioning tends to establish that the factor was pretextual. Had the prosecutor given the same reason for striking Hernandez as the majority advances, this court likely would have found the reason to be pretext. Nevertheless, the majority is somehow comfortable that Hernandez was struck because she worked in housekeeping at the juvenile detention center, not because she was Hispanic.

#### 4. Prospective Juror Maria Carrillo

In the case of Maria Carrillo, the majority speculates that the prosecutor struck her because she "had a son who had a criminal record." Maj. op. at 9. Again, this explanation is less than satisfying in light of this case's record. As a teenager, Carrillo's son was arrested once for stealing. The arrest occurred fifteen years before Carrera's trial. When the prosecutor asked Carrillo whether she had any bad feelings toward the court or the police, she answered no. The majority's justification is even less convincing because the prosecutor did not exercise peremptory strikes against two white jurors even though their sons had more serious criminal records. Those records involved convictions for theft and drug possession, and even prison time.

The majority's speculation, had it been offered by the prosecutor, would have fallen under the Supreme Court's

definition of pretext. *See Miller-El v. Dretke*, 545 U.S. 231, 241 (2005) ("If a prosecutor's proffered reason for striking a [minority] panelist applies just as well to an otherwise-similar [non-minority] who is permitted to serve, that is evidence tending to prove purposeful discrimination"); *see also Snyder v. Louisiana*, 552 U.S. 472, 483-84 (2008). This court found pretext where a prosecutor claimed that he discharged a black juror because her relative had a criminal history while he seated white jurors whose relatives had equivalent criminal histories. *Green*, 532 F.3d at 1033. The majority seeks to justify the prosecutor's exercise of a peremptory strike against Carrillo stating reasons this court has rejected when offered by a prosecutor. I cannot go along with that.

### 5. Prospective Juror Mary Garcia

The majority justifies the strike of Mary Garcia because, the majority insists, Garcia "told the court at the beginning of her voir dire that she could not impose the death penalty, though she later said she could do so." Maj. op. at 9. As the majority opinion concedes, Garcia said that she *could* impose the death penalty and that she would, in appropriate circumstances. Asked by the court if she could "think of a case where the crime for instance is so vicious that the death penalty should be imposed," Garcia said "yeah." Asked whether she could vote for the death penalty in such a case, she said "yes." Asked once more by the court whether she opposed the death penalty, Garcia gave her final answer: "no." But, Thomas Yale, a white juror, also expressed reservations about the death penalty. Nevertheless, the prosecutor did not exercise a peremptory strike against Yale, and he served as a juror.

In short, the record shows one peremptory strike against a Hispanic juror that even the majority opinion concedes to be "problematic" and four strikes of Hispanic jurors where there is no plausible explanation other than racial prejudice. This record cried out for Carrera's counsel, Huffman, to make a *Wheeler* objection. When Carrera's case was on appeal to the California Supreme Court, prosecutor Vedrasco filed an affidavit that he "could have come up with specific reasons justifying each of [his] challenges." That statement is unsupported by the record.

Moreover, the prosecutor's credibility is doubtful, given his misconduct in prosecuting the case. This misconduct was so severe that the U.S. District Court vacated Carrera's death sentence because the court determined that the prosecutor had "elicited contradictory evidence," "argued inconsistently" at the separate trials of Carrera and the juvenile co-defendant, and "concealed the fact of inducements to inmate witnesses." *Carrera v. Ayers*, No. 1:90-CV-00478-AWI, 2008 WL 681842, at \*2 (E.D. Cal. Mar. 11, 2008). The question is not whether "the prosecutor might have had good reasons to strike the prospective jurors. What matters is the *real* reason they were stricken." *Paulino v. Castro*, 371 F.3d 1083, 1090 (9th Cir. 2004).

## B. The Fact that Two Hispanic Jurors Were Seated Does Not Undermine a *Wheeler* Claim.

In attempting to demonstrate that Carrera cannot show a "reasonable probability" of succeeding on his *Wheeler* claim, the majority concludes that the *Wheeler* motion would have likely failed under the law at the time because two Hispanic jurors made it onto the jury. Maj. op. at 10. To support this

claim, the majority relies on a pair of California appellate court cases, *People v. Boyd*, 212 Cal. Rptr. 873, 880-82 (Ct. App. 1985) and *People v. Davis*, 234 Cal. Rptr. 859, 866 (Ct. App. 1987). But those cases were not on the books at the time of Carrera's 1983 trial. And in *People v. Snow,* the California Supreme Court overruled both cases before Carrera's appeal, so they would never have governed Carrera's *Wheeler* motion. *See People v. Snow*, 746 P.2d 452, 457 (Cal. 1987) ("we disapprove language in *People v. Davis* . . . suggesting that the presence of two or three Blacks in the jury box following voir dire precludes the trial court from finding a prima facie case of exclusion.").

*People v. Snow* explained that "the fact that the prosecutor passed or accepted a jury containing two Black persons [does not] end our [*Wheeler*] inquiry, for to so hold would provide an easy means of justifying a pattern of unlawful discrimination which stops only slightly short of total exclusion." *Id.* at 456-57 (internal quotations omitted). Just as in *Carrera*'s case, the prosecutor in *Snow* struck six out of eight minority jurors. *Id.* at 457. The defense attorney in *Snow* objected to those disproportionate strikes despite the prosecutor's acceptance of two African-American jurors. In *Snow,* the California Supreme Court held that the defense attorney had successfully established a prima facie case for a *Wheeler* motion, and thus reversed the conviction. *Id.* at 457-58.

Unlike the defense attorney in *Snow*, Carrera's defense counsel did not object to the disproportionate strikes of minority jurors. Had she done so, the California Supreme Court would have been guided by the decision it made three years earlier in *Snow*, and it likely would have found that the

two Hispanic people on Carrera's jury did not negate the other discriminatory peremptory juror strikes.

## III.    Conclusion

The Supreme Court has long held that a "fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955). Carrera did not receive a fair trial because the prosecutor purposefully excluded Hispanic jurors, and Carrera's attorney did nothing to challenge him. The majority does not dispute that Carrera's attorney erred, but it somehow finds that Carrera's claim would not have had a "reasonable probability" of succeeding. The majority reaches that conclusion by misreading the record and the law. I respectfully dissent.